**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Joseph Henry Paul DAVIDSON,**
**Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 16, 2004.
Filed Oct. 14, 2004.

---

W. Wayne Punshon, Media, for appellant.

George M. Green, Asst. Dist. Atty., Media, for Com., appellee.

Before: LALLY–GREEN, OLSZEWSKI, and BECK, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Joseph Henry Paul Davidson, appeals from the judgment of sentence entered on February 25, 2003, in the Court of Common Pleas of Delaware County. After careful review, we affirm.

¶ 2 The trial court summarized the factual and procedural background of the case as follows.

On or about February 6, 2002, Joseph Henry Paul Davidson ["Appellant"] was arrested and charged with fifty (50) counts of Sexual Abuse of Children (18 Pa.C.S.A. § 6312). Appellant was arrested as a result of a criminal investigation conducted by members of the Delaware County Criminal Investigation Division's Task Force Triad, which directs its efforts in the area of Internet crimes against children. Members of Task Force Triad learned of Appellant's involvement in child pornography using the Internet and[,] after seizing Appellant's computer, discovered approximately five hundred (500) images of child pornography located on the computer's hard drive.

On November 13, 2002, Appellant was tried before this Court, sitting without a jury, with respect to fifty (50) of the aforesaid images. On November 14, 2002, this Court convicted Appellant of twenty-eight (28) counts of Sexual Abuse of Children. On February 25, 2003, Appellant was sentenced to serve an aggregate term of confinement of not less than one (1) year less one (1) day nor more than two (2) years less one (1) day.... Additionally, a term of probation of five (5) years was imposed [to run concurrently]. Also, Appellant was ordered to undergo a psychosexual evaluation, with supervision by the Sexual Abuse Unit. Appellant was ordered to comply with all recommendations. Further, this Court ordered the forfeiture of Appellant's computer hard drives and monitor. Appellant was ordered to register with the Pennsylvania State Police for ten (10) years and provide a DNA sample prior to his release. Immediately following sentencing, Appellant filed Motions for Extraordinary Relief pursuant to Pa.R.Crim.P. 704 ... challenging the sufficiency and weight of the evidence, which were denied by this Court. (N.T. 2/25/03 at 13, 14).

On March 11, 2003, Appellant filed a Notice of Appeal, appealing [from] the Judgment of Sentence. On March 13, 2002, this Court directed Appellant to file a Concise Statement of Matters Complained of on Appeal. On or about March 26, 2003, this Court received Appellant's [timely] Concise Statement of Matters Complained of on Appeal....

Trial Court Opinion, 12/30/03, at 1–2.

¶ 3 Appellant raises six issues:

1. Did the trial court err in deciding that the verdict [sic], as a matter of law, was sufficient to prove beyond a reasonable doubt that Appellant was guilty of the offenses charged?

2. Did the trial court commit error in ruling the verdict, as a matter of law, not contrary to the weight of the evidence?

3. Did the court commit error in determining the offense, "sexual abuse of children," 18 Pa.C.S.A. § 6312(d), to be [sic] constitutionally vague insofar as it deprives Appellant of due process by making illegal the possession of depictions of child "nudity if such nudity is depicted for the purpose of sexual stimulation or

gratification of any person who might view such depiction."

4. Did the court err in ruling the offense, "sexual abuse of children," 18 Pa. C.S.A. § 6312(d), was not unconstitutionally overbroad insofar as it deprives Appellant of due process by making illegal the possession of depictions of children showing "nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction?"

5. Did the court commit [error] in determining that Appellant's constitutional right not [to] be placed in double jeopardy was not violated by receiving multiple sentences where the Com[monwealth], counting the quantity [sic] of items of contraband that were found to be in his possession, charged multiple counts for a single possessory offense.

6. Did the court commit error in ruling that the offense, "sexual abuse of children," 18 Pa.C.S.A. § 6312(d), is constitutional although it purports to make criminal the possession of a "computer depiction" of children[,] ignoring wheth-er the subject portrayed in a computer graphic is a real child as required by the United State [sic] and Pennsylvania Constitutions and/or that the Commonwealth did not prove that the computer generated images were representations of real children?

Brief for Appellant at 4–5.[1]

■ ¶ 4 Appellant's first claim is that the evidence was insufficient to prove him guilty beyond a reasonable doubt. Appellant's argument is that there were so many pornographic images on his computer (tens or perhaps hundreds of thousands) and so relatively few images constituting child pornography as to raise the inference that Appellant did not even know of the presence of the child pornography. Appellant argues that the evidence was therefore insufficient to establish that he **knowingly** possessed the child pornography. Brief for Appellant at 9–16.

■ ¶ 5 Our standard of review is:

In evaluating a challenge to the sufficiency of the evidence, we view all the evidence admitted at trial in the light

1. We note with disapproval that the first four issues are on page four of Appellant's brief, and the last two are on page five. We remind counsel that Pa.R.A.P. 2116(a) states: "The statement of the questions involved ... should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception...." *See, Amicone v. Rok,* 839 A.2d 1109 (Pa.Super.2003) (Failure to conform briefs to the requirements of the Rules of Appellate Procedure may result in the quashing or dismissing of an appeal where the defects in the brief are "substantial." Pa.R.A.P. 2101.); *Rabutino v. Freedom State Realty Co.,* 809 A.2d 933, 936 n. 3 (Pa.Super.2002) (The court stated:

It is within this Court's power to quash an appeal for violations of the Rules of Appellate Procedure. *See, Commonwealth v. Stafford,* 2000 PA Super 76, 749 A.2d 489, 493 (2000). Here, Appellant's Statement of Questions Presented exceeds 32 lines and is over one page in length. We turn Appellant's attention to the oft-held principle that the effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them. *See Estate of Lakatosh,* 441 Pa.Super. 133, 656 A.2d 1378, 1380 n. 1 (1995) (quoting, *United States v. Hart,* 693 F.2d 286, 287 n. 1 (3d. Cir.1982)). However, because Appellant's brief is not so defective as to preclude effective appellate review, we decline to quash her appeal in its entirety. Nevertheless, we limit our review to issues I through VI, which appear on the first page of Questions Presented.).

Appellant's two-page statement of questions presented does not impede our ability to review the issues in this case, and, thus, we will consider the six issues raised by Appellant.

most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence was sufficient to have permitted the trier of fact to find that each and every element of the crimes charged was established beyond a reasonable doubt. "[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." In addition, the facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [factfinder] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'"

*Commonwealth v. Nicotra*, 425 Pa.Super. 600, 625 A.2d 1259, 1261 (1993) (citations omitted); *see, Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super.1997).

¶ 6 The crime of sexual abuse of children is defined in 18 Pa.C.S.A. § 6312(a), (d), and (e):

### § 6312. Sexual abuse of children

(a) **Definition.**—As used in this section, "prohibited sexual act" means sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction.

\* \* \*

(d) **Possession of child pornography.**—

(1) Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

\* \* \*

(e) **Evidence of age.**—In the event a person involved in a prohibited sexual act is alleged to be a child under the age of 18 years, competent expert testimony shall be sufficient to establish the age of said person.

¶ 7 Appellant's sufficiency argument focuses on the requirement that a defendant must possess the child pornography knowingly. He does not argue that the photographs on his computer were not pornographic, *i.e.*, that they did not satisfy the definition in 18 Pa.C.S.A. § 6312(a). Title 18 Pa.C.S.A. § 6312(d) contains three elements. There must be a depiction of an actual child [2] engaged in a prohibited sexual act or simulation of such act; the child must be under the age of 18; and the defendant must have possessed or controlled the depiction knowingly. If the child is not engaged in a prohibited sexual act, but nude, the nudity must be for the purpose of sexual gratification or stimulation of a viewer.

¶ 8 There is testimony in the record (primarily Appellant's testimony), that, if believed, raises doubt that Appellant knowingly possessed child pornography in violation of 18 Pa.C.S.A. § 6312(d). Appellant's argument, however, ignores our standard of review. In analyzing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, and draw all reasonable inferences

**2.** See discussion at pages 584–85, *infra*.

in its favor. We then determine whether the evidence was sufficient to have permitted the trier of fact to find that each element of the crimes charged was established beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence, and the factfinder is free to believe all, part, or none of the evidence. *Nicotra.*

¶ 9 Under this standard, the record contains the following evidence supporting Appellant's conviction. Appellant was the admitted builder, owner, and administrator of the computer in question, demonstrating that he was not a computer novice but had specialized computer skills. N.T., 11/14/02, at 134–35, 156–57. Each of the 28 counts of sexual abuse of children corresponds to a separate photograph. All of them depict children engaging in oral, anal, or vaginal sex, or in various degrees of nudity, and depict children in seductive positions, which implies that they were taken for the purpose of sexual gratification or desire. *Id.* at 34–76. Each of the 28 photographs for which Appellant was convicted appeared in more than one place on Appellant's computer. *Id.* at 144.

¶ 10 Viewing the evidence in the light most favorable to the Commonwealth, together with all reasonable inferences favorable to the Commonwealth, the evidence is clearly sufficient to find Appellant guilty of all elements of the offense beyond a reasonable doubt. Appellant's first claim fails.

¶ 11 The second issue is whether the verdict was against the weight of the evidence. Appellant argues that he never viewed all the pornographic images on his computer, which would have been "nearly impossible" because there were so many. He claims that "the shear [sic] number of graphics" supports this contention. Appellant argues that he downloaded pornogra-

phy "randomly," and that he often did so while he was away from his computer because downloading was a long, slow process. He claims, therefore, that the evidence establishes that child pornography could have been placed on his computer by someone else without his knowledge. Brief for Appellant at 17–18. In addition, Appellant claims that his cooperation with Lt. David Peifer, the Commonwealth's agent who investigated Appellant's computer pornography, proves that Appellant was unaware that his computer contained child pornography. For example, Appellant claims that he led Detective Peifer to his computer and turned it on, that he permitted the detective to search the files on the computer, that he voluntarily directed the detective to his second hard drive which contained the bulk of Appellant's pornography, and, finally, that when the detective told Appellant he was confiscating the computer, Appellant helped the detective carry the computer to the officer's car. Brief for Appellant at 17–18.

¶ 12 Our standard of review for a challenge to the weight of the evidence is as follows. "A new trial should be granted only where the verdict is so contrary to the evidence as to shock one's sense of justice." *Davis v. Mullen,* 565 Pa. 386, 773 A.2d 764, 766 (2001). When "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Nudelman v. Gilbride,* 436 Pa.Super. 44, 647 A.2d 233, 237 (1994) (*quoting, Lupi v. Keenan,* 396 Pa. 6, 151 A.2d 447, 452, 453 (1959) (Musmanno, J., dissenting)).

¶ 13 Our Supreme Court has repeatedly emphasized: "One of the least assailable reasons for granting or denying

a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 753 (2000). When reviewing a challenge to the weight of the evidence, the verdict may be reversed only if it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621, 630 (1995); *accord, Katz v. St. Mary Hospital,* 816 A.2d 1125, 1128 (Pa.Super.2003); *Marks,* 704 A.2d at 1098.

¶ 14 The record reflects that Appellant had a bench trial, so the trial judge was the factfinder. The same evidence in the record that provided sufficient evidence to support Appellant's conviction also convinced the trial judge that the verdict was not against the weight of the evidence. We agree. The verdict is not shocking to the judicial conscience, and we conclude that the trial court did not abuse its discretion in rejecting Appellant's argument that the verdict was against the weight of the evidence.

¶ 15 In issues three and four, Appellant claims that the statute defining "sexual abuse of children," 18 Pa.C.S.A. § 6312(d), is unconstitutionally vague and overbroad. He argues that the vagueness lies in the statutory prohibition of "nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." *Id.* He argues that some pictures of a nude infant in a family setting are clearly not pornographic but might, nevertheless, provide sexual stimulation or gratification to some warped viewers. Brief for Appellant at 19–20.

¶ 16 Appellant's claim that the child pornography statute is unconstitutionally overbroad focuses, likewise, on the prohibition against "nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who

might view such depiction." *Id.* He argues that the statute is overbroad under the definition in *Commonwealth v. Mayfield,* 574 Pa. 460, 832 A.2d 418, 425 (2003): "A statute is overbroad if by its reach it punishes a substantial amount of constitutionally protected conduct. If the overbreadth of the statute is substantial, judged in relation to its legitimate sweep, it may not be enforced against anyone until it is narrowed to reach only unprotected activity." Appellant likens the child pornography on his computer to classical art and, accordingly, claims that it should not be prohibited as sexual abuse of children.

¶ 17 In reviewing the claims that the statute is vague and overbroad, we are subject to the following standards. There is a strong presumption that legislative enactments do not violate the constitution. *Id.* at 421. There is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. *Id.* A statute will be found unconstitutional only if it clearly, palpably, and plainly violates the constitution; all doubts are to be resolved in favor of a finding of constitutionality. *Id.*

¶ 18 The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct. *Id.* at 422. In contrast, a statute is overbroad if by its reach it punishes a substantial amount of constitutionally-protected activity as well as illegal activity. *Id.* at 425. When the overbreadth of the statute is substantial, judged in relation to its legitimate sweep, it may not be enforced

against anyone until it is narrowed to reach only activity unprotected by the constitution. *Id.*

¶ 19 The term "nudity" in 18 Pa. C.S.A. § 6312 is defined precisely enough to avoid a challenge for vagueness under the state and federal constitutions. Nudity is defined in section 6312(a), which provides that " 'prohibited sexual act' means ... nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." Thus, possessing a depiction of a nude child under the age of 18 years is a crime only when it is for the purpose of sexual stimulation or gratification. 18 Pa. C.S.A. § 6312(d). There is nothing vague about that definition. It permits ordinary people to understand what conduct is prohibited.

¶ 20 To be overbroad, a statute must punish a substantial amount of constitutionally-protected activity as well as illegal activity. *Mayfield*, 832 A.2d at 425. The trial court concluded that "there is little latitude to argue that possession of the images revealed in Court is in any way a constitutionally protected activity." Trial Court Opinion, 12/30/03, at 16. Rather, "such conduct grossly offends what society deems to be acceptable behavior." *Id.* We affirm the trial court on the basis of these conclusions, and hold that the statute is not unconstitutionally overbroad.

¶ 21 Next, Appellant claims that the sentencing court violated his constitutional right not to be placed in double jeopardy when the court imposed multiple sentences for multiple counts of possessing multiple items of pornography, because, Appellant argues, there was a single possessory offense. He claims that under *Commonwealth v. Gatling*, 570 Pa. 34, 807 A.2d 890 (2002) (plurality opinion), possession of the 28 graphics depicting child pornography was a single offense and the 28

possession convictions must merge for sentencing purposes. Brief for Appellant at 25–28.

¶ 22 Appellant misinterprets *Gatling*. *Gatling* summarizes the legal principles governing merger of offenses and when, for double jeopardy purposes, offenses merge so that separate sentences may not be imposed. *See, Gatling*, 807 A.2d at 894–96. Significantly, however, the Court stated: "The preliminary consideration is whether the facts on which both offenses are charged constitute one solitary criminal act. If the offenses stem from two different criminal acts, merger analysis is not required." *Id.* at 899.

¶ 23 Under this standard, we do not get to the question of merger, because the offenses charged in this case stemmed from different criminal acts. The record establishes that the 28 pictures found to be pornographic depictions of children involved different children or, in some cases, the same children photographed multiple times. Each photograph of each child victimized that child and subjected him or her to precisely the type of harm the statute seeks to prevent. Thus, it is clear that there were 28 different criminal acts, and, under *Gatling*, there is no need to reach the question of merger.

¶ 24 The Supreme Court has stated that, in this context, the court's interest "is to avoid giving criminals a 'volume discount' on crime." *Id.* at 897; *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 22 (1994); *see, Commonwealth v. Duffy*, 832 A.2d 1132, 1138 (Pa.Super.2003).

¶ 25 Were we to apply the merger doctrine as Appellant requests, and merge all 28 offenses into one, Appellant would indeed receive a volume discount on his multiple crimes. As stated above, there were 28 separate offenses, and merger is not appropriate. The trial court, therefore,

did not err in holding that the crimes did not merge for sentencing purposes.

¶ 26 The final issue is Appellant's claim that the offense, sexual abuse of children, as defined by 18 Pa.C.S.A. § 6312(d), is unconstitutional because it punishes the possession of a "computer depiction" of a child even if the subject portrayed in a computer graphic is a computer-generated image and not a real child. He relies on the recent United States Supreme Court case of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). In *Ashcroft*, the Court analyzed the Child Pornography Prevention Act of 1996, 18 U.S.C. § 2251 *et seq.*, a statute closely parallel to the statute at issue in this case. The Court held that the federal statute was unconstitutional because it punished protected behavior—possession of computer-generated images of child pornography—as well as possession of pornographic images of real children. Appellant argues that "the Court premised its decision" on the fact that "computer generated images are indistinguishable from images taken of real children." Brief for Appellant at 29.

¶ 27 Appellant's characterization of the Supreme Court's ruling is most inaccurate. The Court actually stated:

Finally, **the Government says** that the possibility of producing images by using computer imaging makes it very difficult for it to prosecute those who produce pornography by using real children. Experts, **we are told**, may have difficulty in saying whether the pictures were made by using real children or by using computer imaging. The necessary solution, **the argument** runs, is to prohibit both kinds of images. **The argument**, in essence, is that protected speech may be banned as a means to ban unprotected speech. This analysis turns the First Amendment upside down.

The government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse. "[T]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted. . . ." *Broadrick v. Oklahoma*, 413 U.S. [601], at 612, 93 S.Ct. 2908, 37 L.Ed.2d 830. The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.

*Ashcroft*, 122 S.Ct. at 1404 (emphasis added). It is clear that the Court was merely summarizing the arguments of the Government, and the Court certainly did not rest its decision on the "fact" that computer-generated images are indistinguishable from images of real children, as Appellant asserts.

¶ 28 In this case, the trial court interpreted 18 Pa.C.S.A. § 6312(d)(1) to require any computer depiction of child pornography to involve a real child rather than a computer-generated image. This is consistent with the plain language of the statute, which reads: "Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting **a child under the age of 18 years** engaging in a prohibited sexual act or in the simulation of such act commits an offense." 18 Pa.C.S.A. § 6312(d)(1) (emphasis added). The trial court stated: "By definition, a 'child under the age of 18 years' refers to an actual child," and not a computer-generated image. Trial Court Opinion, 12/30/03, at 14.

The trial court concluded that nowhere does the statute purport to make it a crime to possess a computer-generated image of a child engaged in prohibited sexual acts.[3] Thus, if a defendant can create reasonable doubt as to whether the images for which he is being prosecuted are computer-generated images rather than real children, then an acquittal would be warranted. *Id.*

¶ 29 The record makes it clear that Appellant was not prosecuted for, or convicted of, possessing computer-generated images of children. The Commonwealth's expert pediatrician, Dr. Allan Lehmicke,[4] testified unequivocally that, based on his training and experience, the 28 images for which Appellant was prosecuted were photographs of **real** children. N.T., 11/14/02, at 14, 17–18. Therefore, based on the evidence of record, Appellant was convicted of possessing images of real children, not computer-generated images of children. Thus, Appellant's final claim fails.

**3.** We note the recent opinion of the United States District Court for the Eastern District of Pennsylvania in *Center for Democracy & Technology v. Pappert (CDT v. Pappert)* 337 F.Supp.2d 606 (E.D.Pa.2004). Under the federal Commerce Clause, the court reviewed the Internet Child Pornography Act, 18 Pa.C.S.A. §§ 7621–7630, a companion to the Sexual Abuse of Children statute, 18 Pa.C.S.A. § 6312. The court characterized the Internet Child Pornography Act as "the first attempt by a state to impose criminal liability on an ISP [Internet Service Provider] which merely provides access to child pornography through its network and has no direct relationship with the source of the content." *CDT v. Pappert*, at 610. The court held that the Pennsylvania Internet Child Pornography Act was unconstitutional because "the [Internet Child Pornography] Act cannot be implemented without excessive blocking of innocent speech in violation of the First Amendment," and "given the current design of the Internet, the Act is unconstitutional under the dormant Commerce Clause because of its affect [sic] on interstate commerce." *Id.* at 611.

The case is of interest because it opined, albeit in dictum, that the Sexual Abuse of

¶ 30 For the foregoing reasons, we affirm the judgment of sentence.

¶ 31 Judgment of sentence affirmed.

¶ 32 BECK, J.: Concurs in Result.

Children statute did not criminalize "virtual," *i.e.*, computer-generated, images of children, but only photographs of actual children. *Id.* at 650 n. 8. This is, of course, the conclusion reached by the trial court in this case.

*CDT v. Pappert* is also noteworthy for its extensive, if not comprehensive, review of computer technology, explanations of the workings of the Internet and the World Wide Web, and definitions of scores of computer-related terms.

**4.** Dr. Lehmicke's qualifications included a three-year residency in pediatrics, then 26 years of practice as a pediatrician. His experience included working with Children and Youth Services evaluating children for adoption or child abuse or sexual abuse. He had attended several conferences on child sexual abuse. He had testified as an expert in the field of physical and sexual abuse of children approximately 20 times. He was qualified in this case as an expert in the field of physical and sexual abuse of children. N.T., 11/14/02, at 4–6. Dr. Lehmicke's professional experience included viewing thousands of pictures of children, *id.* at 14, 17, and seeing thousands of children in person. *Id.* at 18.